UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 14-13967-GAO

JENNIFER LYNN DUPRAS,
Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner, Social Security Administration,
Defendant.

OPINION AND ORDER
March 4, 2016

O'TOOLE, D.J.

## I.     Introduction

The plaintiff, Jennifer Lynn Dupras, appeals the denial of her applications for Social Security Disability ("SSD") benefits and Supplemental Security Income ("SSI") benefits by the Commissioner of Social Security ("Commissioner"). Dupras applied for SSD and SSI benefits during July and August 2011, alleging disability since October 1, 2008.[1] (Administrative Tr. at 17, 420 [hereinafter R.].)[2] Dupras' applications for Social Security benefits were denied at the initial level of review on December 23, 2011, and upon reconsideration on June 3, 2012. (Id. at 16–17.) On July 31, 2012, Dupras requested a hearing before an Administrative Law Judge ("ALJ"). (Id. at 17.)

---

[1] Dupras had filed previous SSI and SSD claims which were denied. Those matters are not relevant to the issues addressed in this opinion.

[2] The administrative record has been filed in its original paper form (dkt. no. 12). Its pages are numbered in the upper right-hand corner of each page. Citations to the record are to the pages as originally numbered.

The hearing before the ALJ took place on July 11, 2013. (Id. at 26.) Dupras was represented at the hearing by an attorney. (Id. at 17.) At the hearing Dupras, her husband, and a vocational expert provided oral testimony. (Id.) On August 6, 2013, the ALJ issued a written decision finding that Dupras (1) was not disabled under Sections 216(i) and 223(d) of the Social Security Act and therefore not entitled to collect SSD benefits and (2) was not disabled under Section 1614(a)(3)(A) of the Social Security Act and therefore not entitled to collect SSI benefits. (R. at 30.)

On September 16, 2013, Dupras requested that the Social Security Administration Appeals Council review the ALJ's decision. (Id. at 11.) The Appeals Council denied Dupras' request for review on August 25, 2014. (Id. at 8.) Having exhausted her administrative remedies, Dupras filed this action.

Before the Court is Dupras' Motion for Judgment (dkt. no. 15) reversing the Commissioner's decision and the government's Motion for Order Affirming the Decision of the Commissioner (dkt. no. 19). I affirm the Commissioner's decision because there was substantial evidence in the administrative record to support it and there was no error of law.

## II. Background

Dupras was thirty-one years old when the ALJ rendered his final decision. (R. at 437.) Her formal education went as far as completing the eighth grade. (Id. at 26, 447–48.) Prior to the alleged onset of the disability, Dupras worked various jobs, including: cashier at several donut shops, bank teller, bartender, reservations agent for hotels, and clothing tagger at a retail store. (Id. at 26, 133.) Dupras alleges that bipolar disorder, post-traumatic stress disorder ("PTSD"), anxiety, and attention deficit disorder ("ADD") prevent her from working and make it difficult for her to be around people or go out in public. (Id. at 26.)

A. Medical and Treatment History

According to the record, Dupras has or had prescriptions for various medications, including Trazadone (to manage bipolar disorder and mood), Ropinirole (to address restless twitching of hands and legs), Alprazolam (to manage bipolar disorder and anxiety), Methylphenidate (to manage ADD), Citalopram (for mood stabilization), and Suboxone (to help prevent opioid abuse). (Id. at 184.) Dupras also had a prior history of substance abuse, which was deemed immaterial by the ALJ after review of the medical reports. (See id. at 25.)

   *i. Dupras Self-Assessment*

At the hearing before the ALJ, Dupras provided testimony about her past, her symptoms, and her day-to-day life. Dupras told the ALJ she is hesitant to be in crowds or around others, and that she experiences racing thoughts; poor concentration, focus and attention; and difficulty sleeping. (Id. at 446–47, 449, 454–55.) Dupras testified that she is unable to read, drive a car, or watch television because of an inability to concentrate for more than five minutes at a time. (Id. at 449, 453, 458.) Dupras said she has difficulty completing tasks she starts. (Id. at 454–55.) She does not participate in any community events and did not express any interests or hobbies. (Id. at 453–54.) In discussing her day-to-day life, Dupras said she stays in the house most of time, isolating herself in her room watching television. (Id. at 446–47, 455, 459.) She estimates leaving the house about once per week. (Id. at 447.) Dupras depends on her husband to do most of the chores, including grocery shopping, and to manage all of her appointments and reminders. (Id. at 447, 449–50, 469–70, 477.)

According to oral testimony given by her husband, Dupras depends on cell-phone alarms for reminders to take medications and maintain personal hygiene. (Id. at 469–70.) Medical treatments include periodic visits with psychiatrist Richard Sens as well as visits with various

counselors in past years. (Id. at 450.) Dupras used cocaine from the ages of sixteen to twenty-seven. (Id. at 444.) She continues to undergo weekly, rather than monthly, urine tests by her own choice. (Id.) Dupras said she experiences PTSD symptoms, including frequent flashbacks (about twenty times per day), nightmares, and panic attacks (seven or eight times per day). (Id. at 446, 452.) She traced her PTSD symptoms to her father and ex-boyfriend having physically and mentally abused her. (Id. at 445.) She told the ALJ she was raped by her ex-boyfriend on multiple occasions after he drugged her with the prescription drug Seroquel. (Id.) Dupras discussed one occasion of suicidal thoughts. (Id. at 451.)

ii. *Mark D. Sokol, Ed.D. Assessment*[3]

In June 2009, Mark D. Sokol, Ed.D. conducted a consultative examination of Dupras. (Id. at 395.) During the examination Dr. Sokol found Dupras cooperative, well groomed, able to understand simple instructions, able to perform simple tasks under supervision, and with moderate impairment to maintaining attention, concentrating, and relating to others. (Id. at 396–98.) Dr. Sokol assigned Dupras a Global Assessment of Functioning ("GAF") score of 60—indicative of moderate or mild limitation.[4] (Id. at 23, 398.)

---

[3] The report of this consultative examination was prepared five days before the "earliest allowable onset date." (See R. at 16 n.2, 17.) The brief on behalf of the plaintiff does not discuss an "earliest allowable onset date." The brief for the government agrees with the ALJ in saying that the earliest allowable onset date is June 12, 2009 because of prior rejections to Dupras' applications for disability benefits. (See Mem. in Supp. of Def.'s Mot. to Affirm the Comm'r 3 n.1 (dkt. no. 20); R. at 17.) In making a disability determination, the ALJ develops and reviews the claimant's "complete medical history." 20 C.F.R. § 404.1512(d); 20 C.F.R. § 416.912(d). Complete medical history includes the twelve months preceding a claimant's application for disability benefits, or longer if the claimant alleges the disability began earlier. Id.

[4] The GAF Scale is a single measure used to track global, clinical progress of individuals. Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 30 (4th ed. 2000). The GAF Scale ranges from 1 to 100. Id. A GAF score from 51–60 indicates "moderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning." Id. at 32. A GAF score from 61–70 indicates "some mild symptoms . . . OR some difficulty in social, occupational, or

### iii.    *Coastal Orthopaedics Assessment*

Coastal Orthopaedics medical personnel examined and monitored Dupras' left ankle in 2009 and 2010 after she complained of severe pain. (Id. at 185.) Doctors determined there was no need for further intervention. (Id.) The issues pertaining to Dupras' ankle pain are not relevant here.

### iv.    *Arbour Counseling Services Assessment*

In 2010, Dupras met with Arbour Counseling Services clinician Lynne Corriveau, M.A. (Id. at 200, 207.) Dupras displayed distress, instability, and anxiety and spoke of issues including past physical abuse, prior sexual trauma, prior substance abuse, depression, flashbacks, difficulty sleeping, and racing thoughts. (Id. at 200, 207, 209.) Corriveau diagnosed Dupras with PTSD, bipolar disorder, opioid dependence in full remission, and cocaine dependence in early remission. (Id. at 209.)

### v.    *John C. Corrigan Mental Health Center Assessment*

Personnel at the John C. Corrigan Mental Health Center, including Dr. Darabus, also conducted multiple evaluations with Dupras during 2010, diagnosing her with PTSD, bipolar disorder, polysubstance abuse, and generalized anxiety disorder ("GAD"). (Id. at 217.) Over the course of the visits, Dr. Darabus evaluated and monitored Dupras' mental status, adjusted prescription medications, and provided minimal psychotherapy as needed. (Id.) The ALJ noted that Dr. Darabus assigned Dupras a GAF score of 55—indicative of moderate limitations. (Id. at 24, 217.)

---

school functioning . . . , but generally functioning pretty well, has some meaningful interpersonal relationships." Id.

    *vi.*  *John Hennessy, Ph.D. Assessment*

As part of her evaluation for disability income benefits, Disability Determination Services of the Massachusetts Rehabilitation Commission referred Dupras to licensed psychologist John Hennessy. (Id. at 239.) Dr. Hennessy interviewed Dupras on December 15, 2011. (Id.) He concluded as follows:

> The claimant is in counselling. Her mental health should improve with sustained compliance psychotherapy. She is functioning at the lower end of normal limits. She is physically capable of working. Her prognosis is fair to good.

(Id. at 243.) Dr. Hennessy assigned Dupras a GAF score of 62—indicative of mild limitation. (Id. at 25, 243.)

    *vii.*  *Richard Sens, M.D. Assessment*

Between 2010 and 2013, Dupras visited with Richard Sens, M.D. (See id. at 24–25, 360.) Dr. Sens' office notes reflect more or less bimonthly visits. The notes indicate that Dr. Sens adjusted Dupras' prescription medications to manage her symptoms. (See, e.g., id. at 25, 263, 417.)[5] Dr. Sens also completed a mental Residual Functional Capacity ("RFC") assessment in June 2013, in which he indicated by checking the relevant boxes on the form that Dupras was "markedly limited" in many areas of mental functioning. (Id. at 355–56.) However, he did not provide any narrative explaining his summary conclusions.

---

[5] Record pages 262–287 encompass exhibits B6-F and B7-F, which are labeled in the index as "Office Visits Notes" of Dr. Sens. (R. at 5.) Pages 5 through 17 of Exhibit B7-F, (R. at 275–87), do not appear to be Dr. Sens' office notes but rather counseling notes from Child and Family Services, Inc.

>   *viii.*   *A. Stephen Spangler, Sc.D. Assessment*

In May 2012 A. Stephen Spangler, Sc.D. performed an analysis of Dupras' medical information and her self-assessment of the symptoms. (See id. at 51–65.) Dr. Spangler found Dupras "likely to have moderate difficulty with complex or detailed instructions, concentration, task persistence, work relationships, working with the public, and adapting to new tasks." (Id. at 61.) Despite the limitations, Dr. Spangler determined that Dupras would be capable of understanding and recalling simple information, focusing on simple tasks for two hours in an eight-hour day, relating in simple social situations, and adapting to simple demands. (Id. at 63.) Dr. Spangler concluded that Dupras was not disabled and generally possessed an RFC sufficient to perform work available in the national or regional economy. (Id. at 64.)

>   *ix.*   *Vocational Expert Assessment*

During the hearing before the ALJ, a vocational expert provided oral testimony assessing Dupras' capacity for employment. (Id. at 462.) The vocational expert testified that a person with Dupras' abilities and limitations, who could concentrate for two-hour periods over an eight-hour day, would be unable to perform Dupras' past work but would be able to perform other jobs available in the national or regional economy. (Id. at 463–64.) According to the vocational expert, Dupras could work at the following jobs: hand packer, laundry worker, assembler, or package sorter. (Id.) However, responding to a different hypothetical question from the ALJ, the vocational expert opined that a person with Dupras' abilities and limitations but who in addition could not maintain concentration, persistence, or pace during an eight-hour workday and would be off task for more than twenty percent of an eight-hour day would be unable to perform either Dupras' past work or other work available in the national or regional economy on a full-time basis. (Id. at 464–65.)

B. The ALJ's Decision

The ALJ's opinion followed the five-step sequential evaluation process mandated by 20 C.F.R. §§ 404.1520(a) and 416.920(a) to determine whether Dupras was disabled. (R. at 18.) The claimant has both the burden of production and proof for the first four steps. Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). Assuming the claimant successfully navigates the first four steps, in step five the burden then shifts to the Commissioner to offer evidence of specific jobs in the national or regional economy that the claimant can perform. Id.

At step one, the ALJ determined that Dupras had not engaged in "substantial gainful activity" since June 12, 2009, the earliest allowable onset date. (R. at 19.)

At the second step, the ALJ must determine whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ found that Dupras had the following severe impairments: bipolar disorder, anxiety disorder, post-traumatic stress disorder, attention deficit disorder, and substance abuse. (R. at 19 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).) The ALJ found that Dupras' other alleged impairment, restless leg syndrome, was not "severe." (Id. at 20.)

Step three, like step two, requires consideration of the severity of relevant impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The ALJ found that Dupras' impairments did not meet or medically equal a listed impairment.[6] (R. at 20.) The ALJ therefore proceeded to assess her RFC[7] before reaching step 4. (Id. at 22.)

---

[6] See 20 C.F.R. Part 404, Subpart P, Appendix 1.
[7] A claimant's RFC is determined "based on all relevant medical and other evidence in [the claimant's] case record," and is used by the ALJ in steps four and five, respectively, to determine if a claimant can perform past work or adjust to new work available in the national or regional economy. 20 C.F.R. §§ 404.1520(e), 416.920(e).

8

The ALJ determined that Dupras had the RFC to "perform a full range of work at all exertional levels," but that she should avoid work requiring frequent contact with the public. (Id. at 22.) The ALJ made that RFC determination because, after considering all of the symptoms, medical evidence, opinion evidence, and other evidence (in accordance with 20 C.F.R. §§ 404.1520(e), 404.1527, 404.1529, 416.920(e), 416.927, and 416.929), he found Dupras could "understand and remember simple instructions[,] . . . could concentrate for two hour periods over an eight hour day[,] . . . could interact appropriately with co-workers and supervisors[,] . . . [and] could adapt to simple change in the work setting." (Id.)

At step four, the claimant's RFC is compared with her past relevant work to determine if she is able to resume that work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is able to resume past relevant work, she is determined to be not disabled. Id. If the claimant is unable to resume past relevant work, the inquiry proceeds to the fifth step. Id. During Dupras' hearing before the ALJ, the vocational expert assessed that a hypothetical individual with claimant's background and RFC could not perform the claimant's past work. (R. at 28, 463.) Consistent with that opinion, the ALJ found Dupras unable to perform any of her past relevant work. (Id. at 28.)

The first four steps of the sequential evaluation process mandated by 20 C.F.R. §§ 404.1520(a) and 416.920(a) to determine whether Dupras was disabled are not at issue here because the plaintiff does not dispute the ALJ's findings for the first four steps. (Pl.'s Br. in Supp. of Mot. for J. 5 (dkt. no. 15-1).)

At the fifth and final step, the claimant's RFC, age, education, and work experience are considered to determine if she is capable of performing other work currently available in the national or regional economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v) (cross-referencing

20 C.F.R. §§ 404.1560(c), 416.960(c)). If the claimant can make an adjustment to other work, and such other work is sufficiently available in the national or regional economy, the appropriate finding is "not disabled." Id.

At the hearing before the ALJ, the vocational expert testified that a number of jobs in the national or regional economy existed for a person with Dupras' age, education, work experience, and RFC. (R. at 463–64.) Consistent with the vocational expert's opinion, the ALJ found Dupras able to make a successful adjustment to other work available in the national or regional economy. (Id. at 29.) The ALJ accepted the vocational expert's testimony that Dupras would be able to perform the representative occupations of hand packer,[8] laundry worker,[9] assembler,[10] or package sorter.[11] (Id.) Relying on the testimony of the vocational expert, the ALJ concluded that Dupras was not disabled. (Id.)

### III. Standard of Review

Pursuant to 42 U.S.C. § 405(g), district courts may affirm, modify, or reverse determinations of the Commissioner upon review of the pleadings and transcript of the record. A court will uphold the ALJ's decision denying Social Security benefits when it is "supported by substantial evidence." 42 U.S.C. § 405(g); see also Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam). Substantial evidence exists, and the ALJ's findings must be upheld, "if a reasonable mind, reviewing the evidence in the record as a whole,

---

[8] DOT No. 920.587-018; a medium, unskilled job with about 200,000 jobs nationally and about 3,000 such jobs in Massachusetts. (R. at 29, 463.)
[9] DOT No. 361.685-018; a medium, unskilled job with about 2,000,000 jobs nationally and about 1,000 such jobs in Massachusetts. (R. at 29, 463–64.)
[10] DOT No. 706.684-022; a light, unskilled job with about 900,000 jobs nationally and about 15,000 such jobs in Massachusetts. (R. at 29, 464.)
[11] DOT No. 222.687-022; a light, unskilled job with about 100,000 jobs nationally and about 600 such jobs in Massachusetts. (R. at 29, 464.)

could accept it as adequate to support [the ALJ's] conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). ALJ determinations supported by substantial evidence must be upheld "even if the record arguably could justify a different conclusion." Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam). The Commissioner, not the courts, has the responsibility to draw factual inferences, make credibility determinations, and resolve evidentiary conflicts. Irlanda Ortiz, 955 F.2d at 769.

## IV.    Discussion

Dupras' objections go to the RFC determination. Dupras argues that the ALJ's final decision was not based on substantial evidence because her RFC was more limited than he found. She argues that the weight of the evidence supports the conclusion she had "severe, significant limitations" to concentration, persistence, pace, and social functioning rather than the "moderate" limitations found by the ALJ. (Pl.'s Br. in Supp. of Mot. for J. 7.)

Dupras asserts that the weight of the evidence better aligns with the second hypothetical put to the vocational expert—that someone with Dupras' age, education, work experience, RFC, who also had an inability to "maintain concentration, persistence or pace over an eight-hour workday such that this person would be off work task greater than [twenty] percent of the eight-hour workday," would be unable to perform Dupras' past work and unable to perform any job available in the national or regional economy. (See R. at 464–65.) Specifically, Dupras complains that the ALJ erred in discounting her credibility and improperly resolved conflicting medical assessments. Because both of these findings were supported by substantial evidence, the ALJ's RFC determination and, consequently, the ultimate denial of benefits were also supported by substantial evidence.

A. Dupras' Credibility

Dupras claims that the ALJ erred in assessing her credibility by finding that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. at 27.) Dupras also argues that the ALJ erred in assessing her subjective complaints by failing to properly evaluate within the framework set forth in Avery v. Secretary of Health & Human Services, 797 F.2d 19 (1st Cir. 1986).[12]

Dupras incorrectly asks this Court to reweigh her credibility. ALJ credibility determinations are entitled to deference, especially if supported by specific findings. See Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987) (per curiam). The ALJ may discount a claimant's subjective complaints so long as the ALJ provides specific and adequate reasons for doing so. See SSR 96-7P, 1996 WL 374186, at *1–2 (1996).

Here, the ALJ's written decision provided specific, adequate reasons supported by evidence for discounting Dupras' credibility. Specifically, the ALJ noted inconsistency between Dupras' allegations and the treatment record—finding the records indicated generally successful treatment of Dupras' impairments without any notable setbacks. (R. at 27–28.) In making his credibility determination, the ALJ contrasted Dupras's and her husband's testimony at the hearing with an extensive January 2013 mental status examination which found that Dupras was "for the most part, with no limitations." (Id.) The ALJ also explicitly referenced two consultative

---

[12] Where a claimant alleges more extensive pain than that suggested by medical evaluation, the ALJ must evaluate: (1) "[t]he nature, location, onset, duration, frequency, radiation, and intensity of the pain," (2) "[p]recipitating and aggravating factors (e.g., movement, activity, environmental conditions)," (3) "[t]ype, dosage, effectiveness, and adverse side-effects of any pain medication," (4) "[t]reatment, other than medication, for relief of pain," (5) "[f]unctional restrictions," and (6) "[t]he claimant's daily activities." Avery, 797 F.2d at 29.

examinations and psychodiagnostic interviews in which Dupras was found to have a GAF score in the 60s—also suggesting "little or no limitations." (Id. at 28.) The ALJ did in fact evaluate Dupras' complaints within the parameters set forth in Avery. The ALJ does not need to "expressly discuss every enumerated factor." Balaguer v. Astrue, 880 F.Supp.2d 258, 268 (D. Mass. 2012). As it is the responsibility of the ALJ to make credibility determinations, and credibility determinations supported by evidence in the case record are entitled to deference, this Court must uphold the ALJ's credibility determinations.

### B. Conflicting Medical Evidence

Dupras claims that the ALJ erred in failing to credit the opinion of her treating psychiatrist Dr. Sens that she is "markedly limited in her ability to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances and sustain an ordinary routine without supervision." (Pl.'s Br. in Supp. of Mot. for J. 8 (emphasis and internal quotation marks omitted) (quoting R. at 355).) The plaintiff points to Dr. Sens' RFC assessment in which he found Dupras was "markedly limited" in thirteen areas. (See R. at 355–56.). She also objects that the ALJ instead gave significant weight to the opinion of Dr. Spangler, a state agency Doctor of Science ("Sc.D.") who did not examine Dupras. (Pl.'s Br. in Supp. of Mot. for J. 7.)[13]

As to Dr. Sens, an ALJ is not "obligated automatically to accept [a treating physician's] conclusions." Moore v. Astrue, Civil Action No. 11-cv-11936-DJC, 2013 WL 812486, at *7 (D. Mass. Mar. 2, 2013) (alteration in original) (quoting Guyton v. Apfel, 20 F.Supp.2d 156, 167 (D.

---

[13] Dupras argues that the ALJ should discount Dr. Spangler's assessment because he is an Sc.D. rather than a Doctor of Medicine ("M.D."). (Pl.'s Br. in Supp. of Mot. for J. 8.) The argument is undeveloped. The claimant has not provided any support for the assertion that a person with an Sc.D. degree is not qualified to make the assessment Dr. Spangler made.

Mass. 1998)). The ALJ gives a treating medical source's conclusions controlling weight if the assessment is (1) well supported by "medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When a treating medical source's assessment is not given controlling weight, the ALJ considers the following to determine the correct weight to give the opinion: (1) length of treatment relationship, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors. 20 C.F.R. §§ 404.1527(c)(2)–(6), 416.927(c)(2)–(6). The better an explanation provided by a treating or non-treating source, the more weight the ALJ will accord the opinion. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). The ALJ will also give more weight to opinions consistent with the entire record. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). The ALJ need only "give good reasons in [his or her] notice of determination or decision for the weight [he or she gives the] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). In this case, the ALJ followed the proper steps when giving less weight to Dr. Sens' assessment.

Here, the ALJ determined that Dr. Sens' assessment was not consistent with or well supported by the rest of Dupras' treatment records. (R. at 27.) Specifically, the records indicate that the focus of the visits with Dr. Sens appeared generally to be on adjusting her medications. (See, e.g., id. at 416–19.) The notes do not provide much useful information about the intensity of her symptoms or the doctor's prognosis. Additionally, as noted above, Dr. Sens' assessment of Dupras' RFC contains no narrative description, only checked boxes. (Id. at 27, 355–56.) The ALJ was justified in discounting the summary assessment, especially in light of the lack of support in the actual treatment notes and inconsistency with the rest of the record.

It is the responsibility of this Court to uphold the decision if it is supported by substantial evidence, "even if the record arguably could justify a different conclusion." Rodriguez Pagan, 819 F.2d at 3. It is within the Commissioner's power, and not the Court's, to resolve evidentiary conflicts. Irlanda Ortiz, 955 F.2d at 769. As explained above, there was substantial evidence to support the ALJ's decision.

## V.   Conclusion

For the foregoing reasons, the plaintiff's Motion for Judgment (dkt. no. 15) is DENIED and the defendant's Motion for Order Affirming the Decision of the Commissioner (dkt. no. 19) is GRANTED. The decision is AFFIRMED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge